IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

AEGIS DEFENSE SERVICES, LLC,

      Appellant,

 v.                                     Case No.  5D16-3345

LAURENCE GILBERT,

      Appellee.

_____/

Opinion filed July 28, 2017

Non-Final Appeal from the Circuit Court
for Brevard County,
George B. Turner, Judge.

John H. Pelzer and Haas Hatic, of
Greenspoon Marder, P.A., Fort
Lauderdale, and David Barmak, Pro Hac
Vice, of Mintz Levin Cohn Ferris Glovsky &
Popeo, PC, Washington, D.C., for
Appellant.

Michael R. Riemenschneider and Jeffrey L.
DeRosier, of Riemenschneider, Wattwood
& DeRosier, P.A., Melbourne, for Appellee.

EVANDER, J.

      Laurence Gilbert, a Florida resident, sued his former employer, Aegis Defense

Services, LLC ("Aegis"), a Delaware limited liability company headquartered in Virginia,

for declaratory relief, unjust enrichment, and failure to pay overtime wages for work that

he performed in Afghanistan on behalf of Aegis. The parties' original employment agreement was executed by Gilbert in Arkansas. Aegis appeals a non-final order denying its motion to dismiss for lack of personal jurisdiction and for improper venue. We conclude that the trial court erred in denying Aegis' motion to dismiss for lack of personal jurisdiction and, accordingly, do not address the venue issue.

In his complaint, Gilbert alleged that Aegis was subject to Florida's long-arm jurisdiction pursuant to sections 48.193(1)(a)1. and 48.193(2), Florida Statutes (2015). Section 48.193(1)(a)1. provides, in relevant part, that a defendant submits itself to the jurisdiction of Florida courts for any cause of action arising from the defendant "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state." Section 48.193(2) provides that a defendant "who is engaged in substantial and not isolated activity within the state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity."

In support of these bases for jurisdiction, Gilbert alleged the following facts. He submitted his resume to Aegis on-line from his home in Brevard County, Florida. He was subsequently contacted by a recruiter for Aegis. He and the recruiter spoke several times by phone and communicated several times via electronic mail. He was in Florida when these contacts with the recruiter occurred.

At Aegis' request, Gilbert submitted to pre-employment screening that included a medical examination, a dental examination, and a stress test. The pre-employment screening occurred in Brevard County, Florida, at the offices of medical providers selected by Aegis.

2

Gilbert was subsequently flown, at Aegis' expense, to Arkansas for pre-employment training. While in Arkansas, Gilbert signed his employment agreement. The agreement called for Gilbert to serve as an "EDD canine handler" (an explosives detection dog/canine handler) in Afghanistan. Gilbert was employed by Aegis from July 3, 2014, until September 15, 2015, when he submitted his resignation letter.[1]

In Count I of his complaint, Gilbert sought a judgment declaring that the employment agreement he executed in Arkansas was an adhesion contract that was both substantively and procedurally unconscionable. Gilbert alleged, *inter alia*, that while "isolated" in Arkansas, Aegis provided him with the employment contract and that he had no meaningful opportunity to negotiate different terms because he had already committed his personal schedule to being overseas for a year.

Count II alleged that Aegis had been unjustly enriched by Gilbert's services. In Count III, Gilbert alleged that he was entitled to be paid "overtime wages." Count IV sought a declaration that the forum selection clause was unreasonable, unjust, and the result of unequal bargaining power.

In support of its motion to dismiss, Aegis submitted affidavits from Aegis' officials reflecting that:

1. Aegis is a Delaware limited liability company with its headquarters (and sole U.S. office) in McLean, Virginia;

2. Aegis provides security and risk management services for the overseas operations of the U.S. Government and others;

---

[1] Gilbert's employment contract was for a one-year term. He later signed an updated employment agreement for a second year. Gilbert executed the second agreement in Florida and returned it to Aegis by electronic mail.

3

3. Aegis does not own, lease, or otherwise occupy any property in Florida, nor does it have any offices in Florida;

4. Aegis does not market or solicit business in Florida, and it does not derive any revenue from services rendered or work performed in Florida;

5. Aegis is not licensed or authorized to do business in Florida;

6. Aegis does not maintain any records, bank accounts, or other accounts in Florida and has never paid Florida taxes;

7. Aegis does not have a resident agent in the State of Florida;

8. As reported in his employment application, Gilbert learned of Aegis while working in Iraq; and

9. Gilbert's sole employment services for Aegis occurred in Afghanistan as an EDD canine handler.

In his affidavit filed in opposition to Aegis' motion to dismiss, Gilbert affirmed many of the allegations set forth in his complaint. He also averred that Aegis' website "encouraged" him to submit an employment application, that he was never asked to travel to Virginia to complete any portion of his recruitment process, and that all of his paychecks were directly deposited into his Florida bank account. He did not aver that Aegis' website was specifically directed to Florida residents. After holding a non-evidentiary hearing, the trial court entered its order denying Aegis' motion to dismiss.

A trial court's ruling on a motion to dismiss for lack of personal jurisdiction is reviewed de novo. *Wendt v. Horowitz*, 822 So. 2d 1252, 1256 (Fla. 2002). Here, the jurisdictional facts can be derived from the complaint and affidavits filed by the parties. Those facts can be harmonized. *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499,

4

502-03 (Fla. 1989) ("In most cases, the affidavits can be harmonized, and the court will be in a position to make a decision based upon facts which are essentially undisputed.").

In Florida, determining if personal jurisdiction exists requires a two-part inquiry. *Wendt*, 822 So. 2d at 1257. First, the court must determine whether the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of section 48.193, Florida's long-arm statute. *Id.* Second, if the jurisdictional allegations are within the ambit of the statute, the court must determine whether sufficient "minimum contacts" are demonstrated to satisfy federal due process requirements. *Id.*

Section 48.193 provides two ways to establish long-arm jurisdiction: "specific" in which the alleged activities or actions of the defendant are directly connected to the forum state, and "general" in which the defendant's connections with the forum state are so substantial that it is unnecessary to establish a relationship between this state and the alleged wrongful actions. *Caiazzo v. Am. Royal Arts Corp.*, 73 So. 3d 245, 250 (Fla. 4th DCA 2011). In the instant case, Gilbert alleged specific jurisdiction under section 48.193(1)(a)1. and general jurisdiction under section 48.193(2). The trial court found that Gilbert had established general jurisdiction.

To establish general jurisdiction, section 48.193(2) requires a defendant to have engaged in "substantial and not isolated" activity in this state. Florida courts have defined "substantial and not isolated" to mean "continuous and systematic general business contact with Florida." *Caiazzo*, 73 So. 3d at 250; *Trs. of Columbia Univ. v. Ocean World, S.A.*, 12 So. 3d 788, 792 (Fla. 4th DCA 2009). Continuous and systematic contacts occur where a nonresident defendant's activities are "extensive and pervasive, in that a significant portion of the defendant's business operations or revenue [are] derived from

5

established commercial relationships in the state" or where "the defendant continuously solicits and procures substantial sales in Florida." *Trs. of Columbia Univ.*, 12 So. 3d at 793.

In *Trustees of Columbia University*, the plaintiff filed an action in Florida against various defendants, including the Trustees of Columbia University ("Columbia"), for intentional interference with a contractual or business relationship. Columbia's motion to dismiss for lack of personal jurisdiction was denied by the trial court without explanation. 12 So. 3d at 791. On appeal, the Fourth District Court of Appeal reversed. *Id.* at 795. The court first determined that because nothing in the relevant contracts contemplated payment or performance in Florida, the plaintiff was unable to establish specific jurisdiction for committing a "tortious act within the state" under section 48.193(1)(b). *Id.* at 792.

In evaluating whether general jurisdiction existed, our sister court considered the following facts set forth in Columbia's supporting affidavits:

1. Columbia did not maintain an office or a bank account in Florida and was not registered to conduct business in Florida;

2. Only ten of Columbia's 14,000 employees had Florida addresses. Eight of those employees had part-time or zero salary appointments. The remaining two employees were post-doctoral research scientists who were temporarily located in Florida while doing work at laboratories with equipment not available at Columbia;

3. Of Columbia's thirty-seven alumni associations located in the United States, five were in Florida;

6

4. Although Columbia offered online graduate level courses, only two of the 447 students enrolled in the online classes had Florida addresses; and

5. The Columbia employee alleged to have engaged in the tortious conduct against the Plaintiff lived in Connecticut and worked in New York and had never been a Florida resident.

*Id.* at 791.

Despite the fact that Columbia maintained an interactive website accessible to and accessed in Florida, had employees in Florida, had five alumni associations in Florida, and had two students with Florida addresses enrolled in its online classes, the court concluded that the record evidence was insufficient to establish the "continuous and systematic general business contacts" required to confer general jurisdiction. *Id.* With regard to Columbia's website, the court observed that the mere existence of a website does not tend to show that a defendant is directing its business activities toward every forum where the website is visible. *Id.* at 795 (*citing McBee v. Delica Co.*, 417 F.3d 107, 124 (1st Cir. 2005)). The court concluded that Columbia's contacts with Florida through the website were not substantial. *Id.*

Here, Aegis' contacts with Florida were far less than those identified in *Trustees of Columbia University*. Aegis did not have any offices, employees, or accounts in Florida, did not market or solicit business in Florida, did not derive revenue in Florida, and did not own any property in Florida. It simply maintained a website through which Gilbert was able to submit an employment application from Florida, communicated with Gilbert via telephone and electronic mail while Gilbert was in Florida, arranged to have Gilbert submit to pre-employment medical evaluations and tests in Florida, and remitted Gilbert's

7

paychecks into a Florida bank account. These limited contacts did not constitute "substantial and not isolated activity" required to establish long-arm jurisdiction under section 48.193(2). *See also Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1225 (9th Cir. 2011) (holding that maintaining "highly interactive" website accessible to forum state residents through which persons could buy and sell tickets to events in forum state and could advertise jobs, hotels, and vacations in forum state was insufficient to establish general jurisdiction); *Caiazzo,* 73 So. 3d at 260-61 (concluding that although defendant maintained website through which Florida residents could contact defendant via electronic mail to inquire of defendant's services and merchandise, defendant was not subject to general jurisdiction under section 48.193(2) where over five-year period defendant's sales from Florida contacts were approximately $100,000 or 4.35 percent of defendant's total sales for this period); *Biloki v. Majestic Greeting Card Co.,* 33 So. 3d 815 (Fla. 4th DCA 2010) (holding that defendants' actions of submitting greeting card orders to plaintiff's warehouse in Florida for shipment to midwestern customers and traveling to Florida for three days to tour plaintiff's facility, learn order fulfillment procedures, and execute documents, were insufficient to establish general jurisdiction).

Gilbert argues, alternatively, that specific jurisdiction was established pursuant to section 48.193(1)(a)(1). We disagree. Specific jurisdiction requires a connection or "connexity" between the enumerated activity in Florida and the cause of action. *Schwartzberg v. Knobloch*, 98 So. 3d 173, 177 (Fla. 2d DCA 2012).

In the instant case, Gilbert alleged that Aegis solicited and interviewed him through its website, telephone communications, and electronic mail while he resided in Florida and that Aegis required him to submit to pre-employment screening in Florida. However,

none of the four causes of action alleged in Gilbert's complaint arose from these activities. Count I challenged the validity of a contract executed by Gilbert in Arkansas. Counts II and III alleged Aegis had an obligation to pay Gilbert additional monies for work he performed in Afghanistan.[2] Count IV simply constituted a challenge to a forum selection provision. Because Gilbert's "claims" did not arise from Aegis' purported employment solicitation activities, specific jurisdiction was not established. *See Crowe v. Paragon Relocation Res., Inc.*, 506 F. Supp. 2d 1113, 1122 (N.D. Fla. 2007) (holding no connection between nonresident defendants' alleged age discrimination against job applicant and its solicitation activities in Florida as was required to exercise specific jurisdiction); *see also DeLeon v. KBR, Inc.*, No. 11-00685 ACK-BMK, 2012 WL 1606068 (D. Haw. May 8, 2012) (holding that where Hawaii residents submitted online job application to nonresident defendants, submitted to pre-employment screening and training in Texas, worked in Iraq and signed employment contracts in Texas and Iraq, claims for illegal disparate treatment during employment did not arise out of defendant's purported solicitation activities in Hawaii, particularly where solicitation activities were not directed to Hawaii residents).[3]

Because Gilbert failed to allege sufficient jurisdictional facts to bring his causes of action within the ambit of Florida's long-arm statute, it is unnecessary for us to address whether Aegis had sufficient minimum contacts with Florida to satisfy federal due process

---

[2] Notably, the complaint did not allege that Aegis had a contractual obligation to pay these monies.

[3] The fact that Aegis chose to remit payments to Gilbert through a Florida bank account does not change our analysis, particularly given that Gilbert did not allege that Aegis was required to make payment in Florida.

9

requirements.  We reverse the order denying Aegis' motion to dismiss for lack of personal jurisdiction and remand with directions to grant the motion.

REVERSED and REMANDED with directions.


COHEN, C.J. and EDWARDS, J., concur.